NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAELVANDER-LEEUW,<br><br>Plaintiff,<br><br>v.<br><br>FIRST UNUM LIFE INSURANCE<br>COMPANY, UNUM PROVIDENT, UNUM<br>GROUP, ABC CO. 1-5, (fictitious names,<br>true names being unknown),<br><br>Defendants. | Civil Action No.: 11-5685<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, by Plaintiff Michael Vander-Leeuw ("Vander-Leeuw" or "Plaintiff") and one by Defendant First Unum Life Insurance Company, Unum Group, Unum Provident ("First Unum" or "Defendant"). The Court decides the motions without oral argument pursuant to Federal Rule of Civil Procedure 78. Upon consideration of the parties' submissions, the Court grants summary judgment in favor of Defendant.

## I. BACKGROUND[1]

This action arises out of a long-term disability claim made by Plaintiff under a policy of group disability insurance issued by First Unum to Vander-Leeuw's employer on January 1,

---

[1] The Court notes that Plaintiff submits that "First Unum's Statement of Undisputed Facts is basically a copy of Ms. Carson's affidavit with a few points added from First Unum's counsel's certification. With all due respect, Local Rule 56.1 requires a statement of undisputed 'material' facts and not a statement of all facts." (Pl.'s Mot. 1).

1999 ("Policy"). (Defendants' Statement of Undisputed Material Facts, ¶ 1) ("DSUMF"). The parties do not dispute that the Employee Retirement Income Security Act of 1984, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq.* governs the Policy.

First Unum initially approved Vander-Leeuw's claim for long-term disability benefits but subsequently determined that Vander-Leeuw was no longer entitled to those benefits and discontinued same. Plaintiff appealed. At the conclusion of the associated review process, First Unum upheld its decision.

Plaintiff filed suit on September 29, 2011 (CM/ECF No. 1). First Unum filed an Answer and Counterclaim on November 30, 2011 (CM/ECF No. 7). On April 12, 2013, Defendant moved for summary judgment, arguing that there is no genuine dispute of material fact as to the following: (1) First Unum's decision regarding Plaintiff's benefits claim was not arbitrary and capricious; and (2) First Unum is entitled to reimbursement of amounts of social security disability payments made to Plaintiff. (CM/ECF No. 31). Plaintiff filed a cross-motion for summary judgment on May 20, 2013 in which he argues: (1) Vander Leeuw is disabled from performing the material and substantial duties of his regular occupation; and (2) First Unum's counterclaim should be dismissed. (CM/ECF No. 35).


A. The Policy

Defendant submits that "[i]n the case of Vander-Leeuw, the Policy provides a gross monthly benefit of sixty-percent of his $49,358 yearly salary, or $2,468.03 monthly." (DSUMF ¶ 2). As discussed below, the parties dispute whether that amount is to be offset by social security disability payments. (Plaintiff's Response to Defendants Statement of Undisputed Material Facts ¶ 2 ("Pl.'s RSUMF"); Defendant's Response to Plaintiff's Statement of

Undisputed Material Facts ¶ 22 ("Def.'s RSUMF"); FU-CL-LTD-000184). The Policy provides

the following definition of "disability":

> You are disabled when Unum determines that:
> - you are **limited** from performing the **material and substantial duties of your regular occupation** due to your **sickness** or **injury**; and
> - you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.
>
> We may require you to be examined by a physician, other medical practitioner and/or vocational expert of our choice. Unum will pay for this examination. We can require an examination as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Unum Representative.

(DSUMF ¶ 4; Affidavit of Jane Carson ¶ 6; Administrative Record FU-CL-LTD-000180)

(emphasis in original). The Policy defines "limited" as "what you cannot or are unable to do."

(DSUMF ¶ 5). As per the Policy, "material and substantial duties" are those that:

> - Are normally required for the performance of your regular occupation; and
> - Cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Unum will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week

(DSUMF ¶ 6). Finally, the Policy defines "regular occupation" as follows: "Regular occupation

means the occupation you are routinely performing when your disability begins. Unum will look

at your occupation as it is normally performed in the national economy, instead of how the work

tasks are performed for a specific employer or at a specific location." (DSUMF ¶ 7).

Importantly, the parties do not dispute that the Policy confers discretionary authority

upon First Unum to determine eligibility for benefits and interpret its terms and provisions.

(DSUMF ¶¶ 8-9; Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ¶¶

8-9 ("Pl.'s RSUMF")). As discussed in greater detail below, Defendant submits that "First

Unum's claims department and appeal unit are completely separate business units from the financial underwriters." (DSUMF ¶ 16).[2]


## B. Initial Claim

Plaintiff submitted a claim dated July 1, 2009 seeking benefits under the Policy. (DSUMF ¶ 38). The claim alleged that he stopped working on July 1, 2009 due to "[p]roblems [with] neck, shoulder, back, leg [and] etc.," which rendered him unable to "sit type [and] stand." (DSUMF ¶ 38; Pl.'s RSUMF ¶ 38). The initial claim contained a submission executed on June 30, 2009, by Vander-Leeuw's treating physician, Dr. Philippe Chemaly, a Diplomate of the American Board of Physical Medicine and Rehabilitation with a subspecialty certified in Pain Management by the American Academy of Pain Management. (DSUMF ¶ 39; PSUMF ¶ 6; Def.'s RSUMF ¶ 6; Admin. R. FU-CL-LTD-000077-000078, 000748). Dr. Chemaly's submission detailed the sources of Plaintiff's pain, his capabilities and limitations. (DSUMF ¶ 39; Pl.'s RSUMF ¶ 39; Admin. R. FU-CL-LTD 000077-000078). Dr. Chemaly noted that he did not advise Vander-Leeuw to cease work and did not advise him to return to work. (DSUMF ¶ 39; Pl.'s RSUMF ¶ 39; Admin. R. FU-CL-LTD 000077-000078).

Dr. Chemaly provided a response to a questionnaire regarding Plaintiff's functional ability, executed on August 11, 2009, in which he noted the following restrictions and limitations: No lifting, no prolonged standing or walking for greater than an hour, and no overhead activities. (DSUMF ¶ 40; Admin. R. FU-CL-LTD-000083-84). The response to the

---

[2] Plaintiff responds that those and other statements contained in an affidavit submitted by Defendant in support of its motion are conclusory self-serving statements. (Pl.'s RSUMF ¶ 11-32). Defendant urges in Reply that Plaintiff does not properly dispute the facts set forth in the Wellman affidavit because it does not cite any affidavit or documentary evidence which would to refute same. L. Civ. R. 56.1(a). Accordingly, the Court deems those facts admitted. Fed. R. Civ. P. 56(e)(2).

questionnaire also provided that Vander-Leeuw's prognosis for return to work on a part-time or full-time basis was "good." (DSUMF ¶ 40). Dr. Chemaly submitted a response to a questionnaire, dated October 30, 2009. (PSUMF ¶ 1; FU-CL-LTD-000070). He responded "no" to whether Plaintiff "could not manage his symptoms and return to work if he was able to alternate sit/stand positions periodically." (Id.) He also explained that Plaintiff was "unable to type for sustained period as he has widespread arthritis in his neck and arms (i.e. elbow & wrists)." (PSUMF ¶ 1; DSUMF ¶ 50; FU-CL-LTD-00070).

Defendant subsequently received Plaintiff's treatment records from Dr. Chemaly, including a medical history from 2006, which described back pain and injuries that resulted from a motor vehicle accident when Plaintiff was nineteen years-old. (DSUMF ¶¶ 43-44). The medical records also revealed a medical report dated July 21, 2009 which documented electrophosiologic evidence consistent with carpal tunnel syndrome. (DSUMF ¶ 46).

First Unum interviewed Vander-Leeuw on November 5, 2009 via phone. (DSUMF ¶¶ 51, 54). At the time, Plaintiff advised that he was also teaching a photography class, during which he would sit down for the most of the three hour class. (DSUMF ¶ 54). He also explained that teaching the class was becoming increasingly difficult in light of his pain. (DSUMF ¶ 54).

On December 10, 2009, Vander-Leeuw underwent hip replacement surgery and a left cup revision shortly thereafter, on December 17, 2009. (DSUMF ¶ 58). The anticipated recovery time was six to eight weeks. (DSUMF ¶ 59). By way of letter dated January 11, 2010, Defendant First Unum advised Plaintiff that he had been approved for long term disability benefits due to his total hip replacement and recovery. (DSUMF ¶ 60). Plaintiff's last day of work was July 2, 2009, and Defendant commenced payment of benefits on December 29, 2009, after the 180-day elimination period. (DSUMF ¶ 60).

On February 24, 2010, Vander-Leeuw had an additional phone interview with First Unum. (DSUMF ¶ 61). During the conversation, Plaintiff advised that he could no longer type all day due to arthritis in his fingers and joints, but that he continued to teach the photography course. (DSUMF ¶ 61).

A senior vocational rehabilitation specialist, Norma Parras-Potenzo reviewed an employer statement submitted by Landman Corsi Ballaine and Ford, P.C., Plaintiff's job description, and notes from Plaintiff's phone interview, and determined that Plaintiff's occupation is most consistent with a legal secretary. (DSUMF ¶ 65). Ms. Parras-Potenzo concluded that Plaintiff's position was most consistent with Legal Secretary, DOT 201.362-010. (DSUMF ¶ 65; Admin. R. FU-CL-LTD-000462-000464). The parties agree that is the applicable position within the Department of Labor's Dictionary of Occupational Titles. Ms. Norma Parras-Potenzo provides that the demands associated with a legal secretary occupation include: "performing secretarial work of a complex nature which includes typing and handling papers and correspondence of a legal nature, such as contracts, briefs, warrants, summonses, complaints, indictments, motions, subpoenas and papers for filing and serving." (Admin. R. FU-CL-LTD-000463). The report listed the following physical demands associated with the position: "Exerting up to 10 pounds of force occasionally, a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Frequently reaching, handling, fingering/keyboarding, talking, hearing near acuity." (Admin. R. FU-CL-LTD-000463). It also explained: "Frequently refers to up to 2/3 of the workday (2.5 – 5.5 hours a day in an eight-hour work day), and occasionally refers to up to 1/3 of the workday (0 – 2.5 hours a day in an eight hour workday). The occupation is performed in an office setting,

primarily working form a seated position." (DSUMF ¶ 65; *see* RSUMF ¶ 65; *see also* Admin. R. FU-CL-LTD-000462-000464). The vocational specialist also noted that "[t]he claimant's occupation is performed in an office setting, primarily working from a seated position. The occupation would allow flexibility of schedule to allow the claimant to incorporate frequent 30 second micro-breaks, in order to change position/posture and give the affected body regions a rest. Examples of these micro-breaks would include walking to the printer or going to get a beverage." (DSUMF ¶ 65; RSUMF ¶ 65).[3]

In or around March 2010, First Unum requested treating physician records to assess continued benefit eligibility. (DSUMF ¶ 66). Defendant made requests of four treating physicians, including Dr. Chemaly.

First, the response from Plaintiff's treating orthopedic surgeon, Dr. Alejandro Gonzalez Della Valle, reflected a primary diagnosis of "Left Total Hip Revision" and included a number of physical activities, such as running, jumping, or long distance walking, that Plaintiff should avoid. (DSUMF ¶ 67). None of the prohibited activities related to typing. Defendant maintains that it did not receive treatment records from Dr. Della Valle. (DSUMF ¶ 68). However, it is undisputed that Dr. Della Valle did not treat Plaintiff following his December 18, 2009, hip revision surgery. (DSUMF ¶ 69; RSUMF ¶ 69).

Second, First Unum also received treatment records from rheumatologist, Dr. Natalie Azar, M.D. (DSUMF ¶ 70). However, Defendant maintains that it did not receive an Attending Physician Statement certifying disability. (DSUMF ¶¶ 70-76). The administrative record does not contain any restrictions and/or limitations placed on Vander-Leeuw by Dr. Azar or an

---

[3] The DOT definition of legal secretary is as follows: "Prepares legal papers and correspondence of legal nature, such as summonses, complaints, motions, and subpoenas, using typewriter, word processor, or personal computer. May review law journals and other legal publications to identify court decisions pertinent to pending cases and submit articles to company officials." 201.362-010.

opinion by her as to whether Vander-Leeuw could perform the material and substantial duties of his regular occupation. (DSUMF ¶ 77). However, office notes indicate that Plaintiff had psoriatic arthritis, widespread musculoskeletal pain, including hand and elbow pain, and improvement of his condition with certain medication. (DSUMF ¶¶ 71-74). Defendant also points out that Dr. Azar's office visit notes make no mention of carpal tunnel syndrome. (DSUMF ¶ 75).

Third, Defendant made multiple requests of Plaintiff's primary care physician, Dr. Beltzer to obtain records and an attending physician statement. (DSUMF ¶ 78-80). Defendant maintains that it did not receive a response, despite six letters and five telephone calls. (DSUMF ¶ 80-81).

Finally, First Unum received updated treatment records from Dr. Chemaly. (DSUMF (DSUMF ¶ 83). Those records reflected a number of office visits and contained a medical report dated February 5, 2010, which noted that Plaintiff had complained of neck, bilateral shoulder, wrist, hand, and right low back pain. (DSUMF ¶ 84). The report also noted that Plaintiff had been recently diagnosed with psoriatic arthritis and documented a number of medications, including oxycontin and fentanyl patches. (DSUMF ¶ 84). Dr. Chemaly submitted additional attending physician statements dated March 2, 2010 and June 18, 2010. (DSUMF ¶¶ 90-91; Admin. R. FU-CL-LTD-000342, 000506). Notably, those documents reflected that Vander-Leeuw could occasionally perform fine finger movements. (Pl.'s RSUMF ¶ 90-91).

First Unum spoke to Plaintiff on the telephone on June 15, 2010. (DSUMF ¶ 92). According to First Unum records, he reported that the following was keeping him out of work at the time: "his neck, shoulder, can't lift arms and can't type. The neck and the shoulder.

[Vander-Leeuw] stated he has pain [in his] shoulders all the time and wrists. He stated that it had gotten worse." (Pl.'s RSUMF ¶ 92; Admin. R. FU-CL-LTD-000479-000483).

Thereafter, First Unum conducted a number of medical reviews. Clinical Consultant, Kate H. Ward, MSN, RN, CC, conducted a medical review and determined that there was no clear indication from the medical records that Plaintiff had an ongoing disease affecting functional capacity. (DSUMF ¶ 93). In conjunction with the review, Nurse Ward unsuccessfully attempted to speak with Drs. Chemaly and Azar on the phone. (DSUMF ¶¶ 94, 98). Dr. Chemaly submitted a response to a subsequent correspondence, but Dr. Azar did not. (DSUMF ¶¶ 97, 100). Dr. Chemaly indicated that Vander-Leeuw had certain permanent restrictions and limitations, including, in relevant part: that he could occasionally reach, handle, and finger/keyboard; that he could only walk or stand for brief periods of time; and limitations on the amount of force he could exert to lift, carry, push, pull, or otherwise move objects. (DSUMF ¶ 100; FU-CTL-LTD-000626).

Dr. James H. Bress, board-certified in internal medicine, conducted a medical review. (DSUMF ¶ 102). Plaintiff asserts the documents referenced in his review do not indicate that he reviewed all medical records. (RSUMF ¶ 102; FU-CL-LTD-000645-0000646). In the course of the review, Dr. Bress spoke with Dr. Chemaly on the phone. (DSUMF ¶ 103). Dr. Chemaly advised that Vander-Leeuw could return to work in a sedentary occupation with the use of a telephone headset, ergonomic workstation with hands in a neutral position for computer work, and hourly breaks to change position, and that doing so "may actually help [Vander-Leeuw] psychologically." (DSUMF ¶ 103). Dr. Bress concluded in a report that Vander-Leeuw was capable of full-time sedentary work with those limitations. (DSUMF ¶ 106).

First Unum was also able to reach treating physician Dr. Beltzer by phone. (DSUMF ¶ 107). In the course of the conversation, Dr. Beltzer advised that Plaintiff had sedentary work capacity. (Id.) Ms. Parras-Potenzo conducted a vocational review, the conclusion of which was that the demands of legal secretary did not exceed Plaintiff's work capacity. (DSUMF ¶ 108). Plaintiff maintains that the referenced documents do not indicate that a full review of the administrative record was conducted. (Pl.'s RSUMF ¶ 108). In addition, Plaintiff asserts that Ms. Parras-Potenzo inaccurately characterized Dr. Chemaly's findings as "frequently" able to reach, handle, and finger/keyboard, whereas his findings indicate that he was "occasionally" capable of those tasks. (Pl.'s RSUMF ¶ 108).

## B. Decision and Appeal

Defendant advised Plaintiff via letter dated December 8, 2010, that it would no longer pay long-term disability benefits. (DSUMF ¶ 110). Plaintiff appealed the decision to discontinue benefits. (DSUMF ¶ 112). Vander-Leeuw submitted an additional letter from Dr. Chemaly, dated May 27, 2011, which stated that Vander-Leeuw could not perform the duties in the job description provided by his employer. (DSUMF ¶ 117; PSUMF ¶ 7). Specifically, Dr. Chemaly stated, in relevant part, as follows:

> Based on this job description of his original position of a legal secretary along with additional restrictions and limitations that I had presented of reaching, handling, fingering and keyboarding, with the restriction and limitation of only occasionally, it is my opinion that the presented restrictions and limitations that I had presented along with the detailed information regarding the job description of legal secretary as per Mr. Vander Leeuw's previous employment, precludes him from being able to return to work in his position as a legal secretary. The rationale is that the restrictions and limitations include only occasional use of reaching, handling, fingering, keyboarding along with allowance for position breaks every hour from a seated or standing position with the claimant reporting significant pain during transferring, lifting, bending, carrying, reaching, along with grasping, fingering and keyboarding. With overall review of the detailed

requirements of his job duties, it is my opinion that Mr. Vander Leeuw clearly cannot sustain a work position as a legal secretary which was his occupation prior to his disability onset date.

(PSUMF ¶ 7; FU-CL-LTD-000747-748). While Defendant maintains that the letter did not indicate whether Plaintiff could provide the job duties of legal secretary as performed in the national economy, Plaintiff submits that the employer's description is analogous to the description in the Occupational Outlook Handbook, 2010/2011 and that of the Department of Labor's Dictionary of Occupational Titles ("DOT") definition of "legal secretary," 201.362-030. (DSUMF ¶ 119; Pl.'s RSUMF ¶ 119; PSUMF ¶ 10).

First Unum again requested medical records from all of Vander-Leeuw's treating physicians. (DSUMF ¶ 120). First Unum received updated medical records from Drs. Azar and Chemaly, but not from Dr. Beltzer. (DSUMF ¶¶ 121-124, 127-129). Those records indicated that Plaintiff's pain was improving. (DSUMF ¶ 121-124, 135-138). Defendant also obtained Plaintiff's social security disability claim file from the Social Security Administration. (DSUMF ¶ 142).

A clinical consultant, Angela Malan-Ezawahry, R.N., reviewed the records and claim file. (DSUMF ¶ 149). She concluded, in relevant part, that "clinical findings do not provide adequate data to coincide with the diagnostic impression [of carpal tunnel syndrome] and treatment plan did not include the expected modalities." (DSUMF ¶ 149).

Dr. Thomas E. Moses, a board-certified orthopedic surgeon, also reviewed the relevant records and social security disability claim file. (DSUMF ¶ 151). Dr. Moses's review did not conclude that typing was among Plaintiff's medically supported restrictions and limitations. (DSUMF ¶ 151). Plaintiff contends that Dr. Moses did not address Vander Leeuw's statements that he cannot type as required by his occupation. (PSUMF ¶ 15). However, Defendant submits

that Dr. Moses did address complaints of hand pain and the carpal tunnel syndrome and psoriatic arthritis diagnoses. (Def.'s RSUMF ¶ 15). After conducting a review, senior vocational rehabilitation consultant, Richard Byard, concluded that Plaintiff could perform the occupation of legal secretary as normally performed in the national economy, even with the restrictions and limitations noted by Dr. Moses. (DSUMF ¶ 154; FU-CL-LTD-001115-001117). In relevant part, Mr. Byard, wrote: "The seated portions of the claimant's occupation would typically be performed with the head, neck, and upper extremities placed in an ergonomically 'neutral' position relative to the computer keyboard and monitor." (FU-CL-LTD-001116).

Even though First Unum did not request or require that Vander Leeuw submit to an examination by a medical practitioner or vocational expert at any point, First Unum issued a letter, dated August 31, 2011, which indicated that it upheld its denial of benefits. (DSUMF ¶¶ 156-57; PSUMF ¶ 18). First Unum based its decision, in part, on Vander-Leeuw's treating physician's statements that he had sedentary capacity and that he continued to teach a photography class. (DSUMF ¶ 158).


## D. Social Security Benefits

As discussed above, it is undisputed that Plaintiff received Social Security benefits beginning in January 2010 in the amount of $1,354.00 monthly as well as payments from First Unum, without any offset. (DSUMF ¶¶ 169-170). The parties dispute whether First Unum is entitled to overpayment in the amount of $14,894.00 (DSUMF ¶ 179). The parties do not dispute, however, that Vander-Leeuw executed a Benefit Payment Option form in which he requested payment of benefits without estimating any offsets and agreed to repay the full amount of any overpayment. (DSUMF ¶ 168).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party must first demonstrate that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The court construes facts and inferences in the light most favorable to the non-movant in order to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). An issue is "genuine" if the evidence is such that a reasonable jury could find for the non-moving party. Id. at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted). "Thus, if a reasonable fact finder could find in the nonmovant's favor, then summary judgment may not be granted." Norfolk Southern Ry. Co. v. Basell USA Inc., 512 F.3d 86, 91 (3d Cir. 2008).


## III. DISCUSSION

As discussed above, there are two primary issues: (1) whether Defendant's decision was arbitrary and capricious; and (2) whether First Unum is entitled to reimbursement for amounts paid in social security disability benefits. The Court will address each in turn.


### A. Plaintiff's Entitlement to Plan Benefits

"ERISA does not set out the appropriate standard of review for actions under § 1132(a)(1)(b) challenging benefit eligibility determinations." Firestone Tire & Rubber Co. v.

Bruch, 489 U.S. 101, 110, 109 S. Ct 948 (1989). However, "a denial of benefits challenged under § 1132(a)(1)(b) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility or to construe the terms of the plan." Id. at 115. In that event, a district court applies the arbitrary and capricious standard of review. Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Employee Health and Welfare Plan, 298 F.3d 191, 194 (3d Cir. 2002); Lasser v. Reliance Standard Life Ins. Co., 344 F.3d 381, 385 (3d Cir. 2003). As discussed above, the parties do not dispute that the Plan at issue confers discretionary authority upon First Unum to determine eligibility and for benefits and to interpret its terms and provisions.

1. Conflict of Interest

     Where a benefit plan grants discretion to an administrator or fiduciary operating under a conflict of interest, such conflict is "weighed as a factor in determining whether there is an abuse of discretion." Firestone, 489 U.S. at 115; Smathers, at 197. The significance of that factor depends on the circumstances of the particular case. Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 117 (2009); Estate of Schwing v. The Lilly Health Plan, 562 F.3d 522, 526 (3d Cir. 2009). A conflict of interest

> should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. It should prove less important (perhaps to the vanish point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decision-making irrespective of whom the inaccuracy benefits.

Met Life, 554 U.S. at 117 (citations omitted).

The parties dispute the extent to which there is a conflict of interest in this case. Defendant concedes that "a conflict of interest exists as [First Unum] both determines whether a claim is payable and pays the claim." (Def.'s Mot. 14). However, "there exists no evidence that this conflict tainted the claim determination." (Def.'s Mot. 14). First Unum points to the affidavit submitted in conjunction with its motions and contends that there exists a "total and complete walling-off of claim decision-making from those interested in Unum's finances. Neither the claims department nor the appeal unit has any role or responsibility in the management, reporting, or other functions regarding First Unum's finances and First Unum's clinical, medical and vocational resources, including medical contractors, are in no way incentivized to deny claims." (Def.'s Mot. 14).

Plaintiff responds that those and other statements contained in an affidavit submitted by Defendant in support of its motion are conclusory self-serving statements. (Pl.'s RSUMF ¶ 11-32; Pl.'s Opp'n. 11). Plaintiff argues that "[f]urther evidence of a conflict on [sic] interest is that fact the [sic] First Unum employs its own doctors as opposed to an 'independent' consultant to review and render opinions involved in the disability decision making." (Pl.'s Opp'n. 12). In support of this argument, Plaintiff points to the undisputed fact that First Unum did not exercise its right to have the insured examined by an "independent physician." (Pl.'s Opp'n. 12).

In addition, Plaintiff contends that as per First Unum's Benefits Center Claims Manual, a "Financial Consulting Team" may provide input or recommend courses of action during the management of a claim file. (PSUMF ¶ 19). The relevant paragraph of the manual also provides that documentation regarding whether or not recommendations were followed is required. (PSUMF ¶ 19). While Plaintiff emphasizes that "[t]he [Claims Manual] specifically provides that during the claims process, First Unum may consult with a financial consulting team and can

follow or not follow the financial recommendations," Plaintiff does not address the requirement that First Unum document same. Under the circumstances of this particular case and the claim file before the Court, Plaintiff does not point to any evidence that First Unum sought or followed the advice of financial consultants.[4] Accordingly, the Court agrees with Defendants that "Vander-Leeuw has proffered no evidence that First Unum violated its own claim handling procedures or the Department of Labor regulations regarding the handling of his claim." (Def.'s Mot. 15). Therefore, under the facts of this case, the Court finds that conflict of interest is not a significant factor.

## 2. Whether Defendant's Discontinuation of Benefits Was Arbitrary and Capricious

Under the arbitrary and capricious standard of review in this context, "a plan administrator's decision will be overturned only if it is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan. A court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." Smathers, 298 F.3d at 199 (quoting Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am., Inc., 222 F.3d 123, 129 (3d Cir. 2000)). Therefore, there must be a reasonable basis for the administrator's decision based on the facts known at the time of the decision. Id. at 199-200. Similarly, "an administrator's decision constitutes an abuse of discretion only if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" Howley v. Mellon Financial Corp., 625 F.3d 788, 792 (3d Cir. 2010). Plaintiff bears the burden of establishing an entitlement to benefits and that

---

[4] In its Reply, Defendant argues that Plaintiff completely misconstrues the role of Financial Consulting Team in any event. (Def.'s Reply 21). It states that members of the team are typically "certified public accounts who provide assistant to claim professionals such as analysis of income tax returns of an insured, calculation of residual disability benefit claims, and determining loss of income to facilitate adjudication of claims." Id.

the claim decision was arbitrary and capricious. Mitchell v. Eastman Kodak, Co., 113 F.3d 433, 439-440 (3d Cir. 1997); Abnathya v. Hoffman-LaRoche, 2 F.3d 40, 47-48 (3d Cir. 1993).

As discussed above, the Policy provides the following definition of "disability":

> You are disabled when Unum determines that:
> - you are **limited** from performing the **material and substantial duties of your regular occupation** due to your **sickness** or **injury**; and
> - you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.
>
> We may require you to be examined by a physician, other medical practitioner and/or vocational expert of our choice. Unum will pay for this examination. We can require an examination as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Unum Representative.

(DSUMF ¶ 4; Affidavit of Jane Carson ¶ 6; Administrative Record FU-CL-LTD-000180). The Policy defines "regular occupation" as follows: "Regular occupation means the occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location." (DSUMF ¶ 7).

The parties do not dispute that "Vander-Leeuw is a legal secretary and that the Department of Labor, Dictionary of Occupational Titles (DOT) 201.262.010 defines the material and substantial duties of a legal secretary." (Pl.'s Br. 2). Nor do the parties dispute that the DOT distinguishes between the occupations of legal secretary and secretary, and that the former is controlling. (PSUMF ¶¶ 8-9; Def.'s RSUMF ¶¶ 8-9).

Having reviewed the relevant portions of the administrative record, as well as the arguments of the parties, the Court finds that substantial evidence supports Defendant's initial determination of benefits. This is particularly so because during the initial benefits determination, to the extent that Plaintiff's treating physicians complied with First Unum's requests for information, none indicated that his conditions precluded him from returning to

work. Indeed, even Dr. Chemaly opined that he could perform sedentary work with certain caveats such as the need for breaks and an ergonomic work station. That was so despite Dr. Chemaly's notation that Plaintiff could only reach, handle, finger, and keyboard occasionally and that those restrictions and limitations are permanent.

In conjunction with his appeal, Plaintiff submitted a letter from Dr. Chemaly, in which he opined that Plaintiff could not perform his job duties based on a description of those duties provided by Plaintiff's employer. As discussed above, the letter stated, in relevant part, that

> Based on this job description of his original position of a legal secretary along with additional restrictions and limitations that I had presented of reaching, handling, fingering and keyboarding, with the restriction and limitation of only occasionally, it is my opinion that the presented restrictions and limitations that I had presented along with the detailed information regarding the job description of legal secretary as per Mr. Vander Leeuw's previous employment, precludes him from being able to return to work in his position as a legal secretary.

(PSUMF ¶ 7; FU-CL-LTD-000747-748). Notably, Dr. Chemaly did not opine that Plaintiff's condition changed or got worse. Rather, his conclusion changed based on a review of Plaintiff's job duties at his previous employment.

Defendant bases much of its argument on the fact that Dr. Chemaly's letter accounts for the duties required by Plaintiff's employment, as opposed to the typical duties performed by a legal secretary in the national economy. The Court agrees with Defendant that the definition of "regular occupation" provided by the Plan is not ambiguous, and, accordingly, finds distinguishable the cases cited by Plaintiff which involved plans that did not define that term. [5]

---

[5] Generally where a plan term is ambiguous, and the plan authorizes an administrator to interpret it, the Court will defer to that interpretation unless it is arbitrary or capricious. Fleisher v. Standard Ins. Co., 679 F.3d 116, 124 (3d Cir. 2010) (citing McElroy v. SmithKline Beecham Health & Welfare Benefits Trust Plan, 340 F.3d 139, 143 (3d Cir. 2003))("Where, however, the abuse of discretion standard applies, we have made clear that we must defer to the administrator's interpretation of ambiguous plan terms unless that interpretation is arbitrary or capricious." _

In any event, Plaintiff argues, and the Court agrees, that the duties described by Plaintiff's employer are consistent with those provided in the DOT definition of legal secretary. Specifically, Vander-Leeuw argues that his job description is consistent with DOT Code 201.362.10. (Pl.'s Br. 6-7).[6]

In addition, Plaintiff submits that although Defendant had the right to request a physical examination by a doctor of its choosing, it did not exercise that right. (Pl.'s Br. 7). Plaintiff argues that "[i]n addition to not requesting an [independent medical examination], First Unum completely disregarded the opinion of Vander-Leeuw's treating physician, Dr. Chemaly, that Vander-Leeuw was disabled from performing the duties of a legal secretary." (Pl.'s Opp'n. 18). Defendant responds that suggesting that it is the insurer's responsibility to request an independent medical examination inappropriately shifts the burden of proof. (Def.'s Opp'n. 10). Further, it points to the fact that at no time did Vander-Leeuw request an independent medical examination himself. (Def.'s Opp'n. 10).

First Unum asserts that it was not arbitrary and capricious for it to reach a different conclusion than Dr. Chemaly in his May 27, 2011 letter. (Def.'s Br. 23). Defendant argues that "ERISA administrators are not required to defer to doctors who have treated a claimant over those doctors who have reviewed a claimant's medical files. (Def.'s Opp'n. 16) (citing Black & Decker Disability Plan v. Nord, 538 U.S. 822, 832 (2003)). As discussed above, the letter stated, in relevant part, that

---

[6] Defendant argues that a number of courts "have upheld an interpretation of 'regular occupation' as meaning a general occupation rather than a particular position with a particular employer." (Def.'s Br. 20). However, none of the cases to which Defendant points are controlling. In any event, typing is a core responsibility of a legal secretary per both the DOT definition as well as Plaintiff's employer's description of duties. As the Court has already determined that the definition provided by the Plan is not ambiguous, it need not address this issue further.

> Based on this job description of his original position of a legal secretary along with additional restrictions and limitations that I had presented of reaching, handling, fingering and keyboarding, with the restriction and limitation of only occasionally, it is my opinion that the presented restrictions and limitations that I had presented along with the detailed information regarding the job description of legal secretary as per Mr. Vander Leeuw's previous employment, precludes him from being able to return to work in his position as a legal secretary.

(PSUMF ¶ 7; FU-CL-LTD-000747-748). Notably, Dr. Chemaly did not opine that Plaintiff's condition changed or got worse. Rather, his conclusion changed based on a review of Plaintiff's job duties at his previous employment. Accordingly, the fact that First Unum reached a different opinion was not arbitrary and capricious. Black & Decker, 538 U.S. at 834 ("[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.").

Plaintiff argues that "First Unum parrots the policy language but ignores same. Instead, First Unum approaches this case as if the policy was the broader 'any occupation' policy which defines disability as being unable to work in any gainful occupation for which the employee is fitted by education, training or experience." (Pl.'s Br. 2). Further, "First Unum ignores the job requirements of a legal secretary and does not consider Vander-Leeuw's inability to type when denying disability benefits." Id.

Upon review of the relevant portions of the administrative record as well as the parties' arguments, the Court finds that Defendant's decision was not arbitrary and capricious. As indicated by the final determination letter (Admin. R. FU-CL-LTD-0011121-001130), Defendant conducted a thorough review of the available records and physicians' statements. None of those records indicated that Plaintiff was incapable of

typing. Rather, Dr. Chemaly stated that Plaintiff could type occasionally and initially opined that he could return to work with certain accommodations, such as an ergonomic work station, based on the same diagnoses and clinical presentation. Dr. Chemaly later changed his conclusion based on a review of Plaintiff's specific job description provided by his employer. However, as discussed above, First Unum was not obligated to credit the opinions of a treating physician over those of its medical consultants. In addition, as discussed above, Plaintiff argues and the Court agrees that the Vander-Leeuw's job description is substantially similar to the DOT's description of a legal secretary in any event. While the final determination letter does not list typing as one of the activities that Vander-Leeuw could engage in full time, the letter does address Vander-Leeuw's ability to do so. (Admin. R. FU-CL-LTD-001124-001125, 001127). Specifically, Plaintiff's psoriatic arthritis was controlled with cream and that "[b]ased on the information available the consulting physician has been unable to find any additional functional loss with respect to carpal tunnel syndrome." (Admin. R. FU-CL-LTD-001127). Therefore, the Court grants summary judgment in favor of Defendant First Unum on the issue of whether its decision to discontinue benefits was arbitrary and capricious.

**B. Defendant's Entitlement to Reimbursement of Amounts Received in Social Security Benefits**

Defendant seeks reimbursement of long-term disability benefits paid to Plaintiff while he was also receiving social security benefits. Plaintiff contends that that amount of benefits received is to be offset by social security disability benefits "which are payable as a result of the same disability." (Pl.'s RSUMF ¶ 2; Admin. R. FU-CL-LTD-000184). On the other hand,

Defendant urges that that provision is inapplicable to First-Unum's counter-claim; rather, the applicable provision reads: "Unum will subtract from your gross disability payment the following sources of income: . . . 3. The amount you, your spouse and your children receive as disability payments because of your disability under the United Social Security Act." ("Def.'s RSUMF ¶ 22; FU-CL-LTD-000184). Defendant also argues that Vander-Leeuw executed a Benefit Option Form "pursuant to which he expressly promised to repay First Unum all overpaid disability benefits resulting from an award of Social Security benefits." (Def.'s Mot. 25).

Plaintiff argues that "First Unum ignores the specific policy language that provides an offset only if the social security payments are for the 'same disability'. Herein, social security benefits wee [sic] awarded based on 'exertional limitations alone' which is not one of the disability claims considered by First Unum." (Pl.'s Br. 2). Rather, the disability application and claim submitted to First Unum was "based on arthritis, joint pain and intractable pain with an emphasis on his inability to type, sit and stand for long periods which are material duties of a legal secretary." (Pl.'s Br. 8). Accordingly, "[h]erein, the Social Security grant of disability is based on physical exertion alone while the Vander-Leeuw's disability claim is based on widespread arthritis affecting his joint, fingers and chronic intractable pain." (Pl.'s Br. 20).

In Reply, Defendant argues that this argument has no merit due to the following:

Vander-Leeuw alleged the same conditions causing his disability in his application for [Social Security] benefits as he alleged in his claim for [long-term disability] benefits with First Unum. Vander-Leeuw did not present any medical conditions to the Social Security Administration that he did not present to First Unum. Moreover, he alleged approximately the same date of disability for both claims; July 5, 2009 for his SSDI claim and July 2, 2009 for his LTD claim with First Unum. In both disability claims, he relied upon the records and opinions of the same treating physicians. Vander-Leeuw's "Disability Determination Explanation," contains the same statement "Find disabled based on exertional limitations alone." An exertional limitation is not a disability. Disabilities are due to a medical condition which causes exertional limitations. In other words, exertional limitations are merely the restrictions and limitations resulting from a medical condition. Here, the exertional limitations identified by the Social Security

Administration are the same limitations upon which Vander-Leeuw relied in support of his claim for benefits under the Policy with First Unum.

(Def.'s Reply 24-25). In his Reply, Plaintiff argues that "First Unum does not cite to any part of the administrative record to support this argument probably because there is no support in the record. It is respectfully submitted that First Unum is bound by its policy language and cannot recovery [sic] duplicate payments from Vander-Leeuw." (Pl.'s Reply 11).

Notably, however, Plaintiff does not argue that the similarities pointed to by Defendant do not exist or that Defendant otherwise mischaracterizes same. In addition, the parties do not dispute that Vander-Leeuw applied for social security benefits at the direction of First Unum, pursuant to the Policy, and in conjunction with his claim for long-term disability benefits from First Unum. (DSUMF ¶ 167). Nor do the parties dispute that Plaintiff executed a Benefit Payment Option form in which he acknowledged the likelihood that he would have to reimburse First Unum for overpayment. (DSUMF ¶ 168). Accordingly, the Court grants summary judgment in favor of Defendant regarding the overpayment of amounts received in Social Security benefits.

## IV. CONCLUSION

Therefore, the Court grants summary judgment in favor of Defendant First Unum. Specifically, the Court finds that there is no genuine dispute of material fact that First Unum's benefit determination was not arbitrary and capricious. Nor is there a genuine dispute of material fact that Defendant is entitled to reimbursement for amounts paid to Plaintiff by the Social Security Administration.

An appropriate Order accompanies this Opinion.

DATED: July 8, 2013

Jose L. Linares
United States District Judge